Number 07-1373, Fairmont Designs Incorporated and others, against the United States. Mr. Wendt. Thank you, Your Honor. May it please the Court. This case was decided contemporaneously with American Signature at the Court of International Trade. And in the Fairmont Designs decision, they said, which came out subsequently in sequence, said that the decision was controlled by the decision the same day in American Signature. And in that decision, the Court of International Trade said the difference between cash deposit rates and liquidation rates is of no significance in these cases because of the automatic assessment regulation. American Signature appealed that decision as did Fairmont Designs. American Signature's case was decided. It was reversed and remanded in a non-precedential opinion, in which case the Court said that although the Department of Commerce may have discussed the implementation of liquidation rates during the investigation, it did not decide those at that time, and that the true nature of the current appeal is focused on liquidation rates and not cash deposit rates. We believe that the same results would be proper here. The true nature of this case is about liquidation rates and not cash deposit rates. With the same issues, although I can see keeping them separate, the reason that they were not consolidated is an oversight, these appeals? We had, if I remember the sequencing, we had discussed it. And the opposing counsel can correct me if I'm wrong, but I think my understanding was that the court would consolidate them if it thought it was appropriate. And we decided not to move for a consolidation motion, in part because we had subsequently filed a motion for reconsideration at the Court of International Trade, in part to address an injunction, but also to discuss the merits. And so we were on a later schedule when it became time to appeal to this court. Well, anyway, let's view them as separate. OK. The way in which the case can be considered different on cash deposit rates or liquidation rates is there's several different ways of looking at it. One is the, excuse me, what will be discussed in the merits of the liquidation are very different. First, if we were to discuss the effective date of cash deposit rates, we would look at the statute, I think it's 1675, 19 U.S. Code 1675, which directs the Department of Commerce to establish preliminary deposit rates and when those are effective, which is based on the Federal Register publication. On the other hand, we believe the core of this litigation, if it moves forward, will be on the statutory gap that Congress left to Commerce, the Department of Commerce, how to liquidate entries in the absence of an administrative review. And that's been addressed through the automatic assessment regulation in part. And so as opposed to discussing the statute, we would be discussing statutory gap. Also, the harms that are at issue over cash deposit rates or liquidation rates are very different. We believe the harm over cash deposit rates would be temporary. It would be the financial harm to the company of having to post cash deposit rates in the interim. And we believe that's what Fairmont Design cited and it's in the investigation originally. Whereas, litigating over liquidation rates would affect actual payments, the final payments to the Treasury. And so there's much different harms. The earlier litigation would have dealt with simply interest, whereas the current litigation, if it moves forward, deals with actual payments, final resolution. And finally, I'll say that Fairmont Designs could not have appealed over liquidation rates from the original decision in the investigation. At that time, no one knew, A, whether there would be an administrative review, and B, if an administrative review was requested, whether it would be rescinded. And so any litigation moving forward at that point over liquidation rates would have been premature and unripe because there was still much action to occur that would have rendered any litigation moot. And if there's a- So what is the remedy that you're now requesting? A remand to the Court of International Trade holding that there is jurisdiction because this is a challenge to liquidation rates and it's within 1581I provision for litigation over the administration and enforcement of anti-dumping. As I read the opinion of the Court of International Trade, it said that your case is controlled by American signature. That's the end of it. American signature has now been reversed. And if we were to agree with you, isn't the proper procedure to remand to the Court of International Trade, for the Court of International Trade now to consider the issue without regard to American signature? That is, the ground on which the Court of Appeals, a fairly narrow ground, if the case is controlled by another case, that ground has now been wiped out by the result of our reversal in American signature. But that doesn't necessarily mean, does it, that you're entitled to prevail before the Court of International Trade. The Court of International Trade might say, well, now I'm no longer relying on American signature, but I now conclude for a different reason that I have no jurisdiction in this case. That's true. That's one remedy. So really, all that you're asking us to do is to remand for the Court of International Trade to take another look at this case without relying on American signature. We would be happy with that. We would also hope that there would be an affirmative decision based on consolidated bearings and other decisions. But yes, we would be content with that. Let's hear from the governor. Thank you, Mr. Wendt. Let me ask you a preliminary question before you get into your argument. Your opponent says that the only reason for this strange classification was clerical error. And you described in your brief that what happened with someone was done inadvertently. Do I take it from that that you agree it was a clerical error? Yes, Your Honor, Commerce found that it was a clerical error. But the issue here is not really about the clerical error. The issue is about a different issue, which is whether or not Fairmont is entitled to a refund based upon retroactive application of the rates. But let me ask you another question. Suppose, for the sake of argument, that we were to conclude that your, if I may call them, your procedural defenses fail, as they did in American Signature, if we ever have to get to the merits, what is the government's position on the merits? Do you concede that they're entitled to get this money back, or do you have a substantive defense as to why you're entitled to keep the money as against the company? Your Honor, the issue before this court is a jurisdictional issue. No, I'm not interested. I just want to find out. I understand your argument. But what I want to find out is nobody has addressed the question. Do you concede that if you didn't have all of these jurisdictional issues, they would be entitled to get their money back? No, Your Honor. If, for example, if they had done a proper suit under 1581c, and if this issue were before the court, or if there were remand, and we get to the merits of the issue. That isn't the question I asked you. I take it what I'm trying to find out is, as between the company and the government, who is entitled to the money? Your Honor, the answer is that if we're to get to the merits, if the parties- Never mind the if. Please answer the question. Yes. The answer is the government has properly determined that these are estimates. The deposit rate is established as an estimate, and that this is, the rates do not go back retroactively. And that's, there's no, they concede that this is- In other words, let me see if I, I'm trying to find out. Your position is that even though you collected this additional money through a clerical error, you're now entitled to keep it, whether or not we agree with your arguments on the jurisdictional point. Yes, Your Honor. And I want to point out that this works both ways. I mean, there could be an error that would work to the producer as advantage. There could be an error that works against the producer. In this case, it works against the producer. We're talking about this case. Yes. But I guess the point is that this automatic assessment provision is, it's an automatic provision, and it applies regardless of who is the prevailing or who it would benefit. In some cases, it benefits the producer. In some cases, it does not. The government's position is that the government clerk makes a mistake, overcharges the importer, and there's no way that that can be recovered. Your Honor, the answer to that question is that there is a way for that to be recovered. One is to, on this issue of retroactivity versus prospective rates, it could file a suit under 151C. And if the court agreed, eventually, that's Why doesn't the government just give the money back instead of requiring scorched-earth litigation for years in order to require compliance with an admitted error and correction of it? Your Honor, I don't believe that's what the government is pursuing, a scorched-earth approach or policy here. Their automatic assessment provision applies when there is no request for administrative review. Administrative review is the proper procedure to determine the most accurate rate possible. To correct a clerical, an admitted clerical mistake, you need an administrative review? No, Your Honor. First, if the issue is about the prospective versus retroactive application of rates, I think it should be clear that Commerce did correct this error prospectively. So for entries following after the date of the amended. Well, the fact they corrected it prospectively doesn't do these people any good with regard to the retroactive improper charge. I mean, you have to concede, I think, in the light of our discussion, that the original assessment at 100 was 198%, that that was incorrect. And Commerce did concede that, yes. But then why didn't, as I repeat what Judge Newman said, why didn't they give back the money? Because it's the issue of retroactive versus prospective application of the rates that these deposits. Well, it's an issue of correcting a mistake. I'm sorry? It's an issue of correcting a mistake. Well, it's an issue of, I guess, which entries this rate would apply to. Is that in dispute? Yes, that is the dispute. Which entry was given the 198% rate? Well, I guess which entries Commerce applied that rate to is not in dispute. Which entries Commerce should apply that rate to, that is the merits of the dispute. And I guess I'd try and go back to the issue that's before this court, which is the jurisdiction of the court, the trial court, to address these issues. I can see why you're trying to avoid the plain question. It seems very strange, a very strange position for our government when it admits a mistake, not to say we're sorry. Here, we correct it. Garland, that's because of the automatic assessment provision that you may have many different rates from the time of the preliminary determination during the investigation to an amendment to the preliminary, as there was here, to the final. You may have a variety of different rates. There's a fundamental difference, isn't there, between a case where the government has misclassified something, it classified it as A and it should have been classified B, or the situation where someone wrote the wrong thing down on a piece of paper. I mean, I have no problem with your case if there was a dispute whether it should have been classified one way or the other. But here, we start with a proposition, I take it, that what the government did was an error. It shouldn't have done what it did. It shouldn't have classified these entries at 198%. It should have classified them at 12% or whatever it was. But the government says, well, that's too bad. Even though we shouldn't have collected the money from it, you can't get it back because you fail to file a proper document or a proper proceeding at some point along the way. Your Honor, I think the issue of them filing the proper challenge, I think as far as 1581C and the challenge of the investigation, there, Commerce, we still support our position, which is that this is an estimate. It's not the actual determination of the rate, which is done during the administrative review, and that these are deposits, that you have many different rates, or you could have potentially many different rates during the investigation. And that these- Why do you need an administrative review if you admit you made a mistake? Because this is, again, an automatic provision, and it implies, I mean, I think the court is focused on the fairness to plaintiff.  It could go in favor of the producer. So the court here is focused on the fairness to plaintiff. There are situations where it works the other way, and it's just an interpretation by Commerce of the statute and how the rate should be determined for particular entries during the course of the investigation. But I guess, I mean, to the extent that the court is concerned about the merits, I mean, I think the case is about jurisdiction, and I think that- We're concerned about the judicial process, and in what is obviously an extreme situation. My observation of some of the administrative reviews we've seen is that it takes years, not necessarily to conduct the review, but to get to it. Then you get to the administrative review, and you look at it and say, oh my goodness, this is a clerical error. And where are we then? The same place that we might be now, except that both sides have expended time and effort and substantial funds. When the error is admitted and conceded, not in dispute, shouldn't one attempt to, rather than place obstacles in the path, time-consuming and expensive obstacles, just fix it? Your Honor, I think this is an issue that could have been addressed, the merits could have been pursuant to 1581C. And I guess to the extent that the court is really concerned about the merits and whether or not Commerce reached the proper decision on merits, Your Honor raises a question about the judicial process. And that's really Commerce's primary concern here today, is that the judicial process and the process, the statutory process, for reviewing Commerce's determinations is adhered to. Not reviewing their determination. The issue of whether the duty should be whatever it is, 12-something percent, instead of 198, is not an issue. Yes, Your Honor. Not reviewing that determination. That was a conceded error. Your Honor, that's correct. That's not the issue before the court, the merits of whether or not the rate should be retroactive versus prospective. The issue before it is the jurisdiction. I think this is an important issue because the problem with what plaintiffs are trying to do is Gabriel, on the jurisdictional issue, hasn't that issue been decided by, I guess it was November 07, American Signature opinion. Are you saying that? I mean, put it this way. Are you saying we should not follow that? No, Your Honor, because American Signature addressed a very limited issue. And there's a very limited issue before this court here, which is, what's the true nature of the action? In American Signature, the court determined that the true nature of the action is something that ASI, American Signature, could not have challenged in a 1581C suit brought within 30 days of investigation. Again, getting to the jurisdiction issue, the facts are pretty much the same. I mean, the scenario is the same. I mean, isn't the correct thing for us to do, granted American Signature was a non-precedential opinion, but it cited and relied upon consolidated bearings, isn't the correct thing for us to do to reverse the decision here based on American Signature and send it back so that these merits issues can be sorted out? Now, isn't that, I mean, why should we do something different than what happened? Because I would have thought the government would have come in. I was expecting when I looked at this that we would have gotten some authority telling us why we shouldn't go with what our panel did in American Signature on November 30th. But nobody sent in anything on that. Well, Your Honor, I guess the American Signature decision was issued after our brief. Well, you can always send in, and the government frequently does send in supplemental authority. Both sides often do, especially when a case comes down that sort of is squarely right on point. Your Honor, the American Signature decision doesn't really assist here because the issue in American Signature, although it's I don't understand you talking about whether it's a different issue, but the fact is that in this case, the Court of International Trade relied on American Signature relied on that, it seems to me, as the basis for its decision. And now it's been wiped out. Perhaps you're arguing that despite that, this judgment should be affirmed on some other ground. I think that the statement by the trial court that it's controlled by its decision. I think the trial court understands that its own decisions are not controlling. It's the same judge. And these decisions were issued at the same time. Basically, the trial court said that American Signature, the true nature of the action, is a challenge, something that could have challenged under 1581C. And in Fairmont, it held the same thing, that the true nature of the action is something that could have been challenged under 1581C. This court in ASI found that the true nature of the action in ASI was different than the trial court thought and is different than what the government thought. That's a very narrow issue, what is the true nature of the action. That's really the only issue. Let me ask you, if we send it back based on American Signature, are there any more? We would be saying, basically, that it was proper to bring the action under 1581I, correct? That would be the import of what we were saying, right? Yes, if the court reversed. Now, if we were to do that, are there any more jurisdictional issues that the government would raise below? Well, I guess that sort of goes to the issue of, if the court reverses and says that there is jurisdiction for something, that doesn't mean there's jurisdiction for anything. I think that's part of the problem we have here, is that if a party can just invoke the words liquidation instructions, like magic words, to assert a claim under 1581I, then that really does in, undermines the entire. No, I assume we would, if, no, I understand that argument, you make that force in your brief. But if we were to follow what we did in American Signature, we would be saying, we understand that, but we're still saying there was jurisdiction properly under 1581I. My question is, if it goes back and we say, a la what we said on November 30, albeit in a non-precedential setting, that jurisdiction was proper under 1581I, what happens then? Well, then we would proceed to the merits. But I guess as far as the merits. I understand. So there would be no more jurisdictional issues, correct? There might be. And I guess it depends on the nature of the court's decision. If the court says each issue is a broad decision, or it's unclear from the court's decision what exactly it is that they can claim. What if the opinion just tracked what was said in American Signature, relying on consolidated bearings? Well, I think if the court were to do that, I think we would argue that the consolidated bearings is a limited decision in which the court held that there was jurisdiction to a challenge for liquidation instructions, where there was a challenge, or the claim was that there's an inconsistency between the final result. So you're saying if we send it back, there may or may not be another jurisdictional issue raised? I guess it totally depends on what the opinion says. But I guess the important thing, and this is why the government really, if the court wonders why we're here and why this is an issue of concern to the government, it's because this distinction between I and C is very important. Because if you allow parties to challenge something under I, that they could have challenged under C. But if we've crossed that Rubicon, so to speak, already, maybe the answer is to change the statute. But let me ask you, I realize we can't decide the merits of this, but picking up on the discussion you had with Judge Newman and Judge Friedman, is on the merits, it's agreed there was an error, right? Yes, Your Honor. OK. Is there a question as to the dollar amount that flowed from that error? Or is that also not in dispute? Your Honor, I'm not sure we were trying to quantify the amount. Because I mean, I heard you say at one point that there was a question as to what, I think there was an allusion you alluded to. It wasn't clear as to exactly what entries were covered. So I'm just trying to, what I'm trying to say is everyone agrees there was an error. And the question is, I was just trying to get a sense of it, maybe you don't have an answer, is there a dispute as to the dollar amount that flowed from that error? Or is it a question where we say, well, there's an error, but we don't know exactly the precise dollar amount? Your Honor, I don't, we've never tried to quantify the exact amount. But I think to go to your question about what I said before about an issue about which entries were covered by a particular rate. I think the idea is that the issue under the merits is what entries should be covered by a particular rate. And they say that this rate should go back retroactive. And that's an issue of what should be covered, not an issue of what is covered. One thing that I'm not clear about, I want to be sure of this, is the government's real concern in this case that any opinion which deals with this unusual situation of a clerical error necessarily could not be so limited and would have broader consequences. Your Honor, that's certainly one of our concerns. I think even putting that aside, I guess if parties are permitted to challenge something under I that should have been challenged under C, then you undo the process for review that includes parties participating in Congress's proceedings in an investigation, administrative review, and includes a statutory time period for review of C cases. So there are a whole host of requirements and procedures that are required in a case brought under C. And if the court permits it under I, then that obviously causes problems. Our concern is in this case, but also in other cases as well, that to the extent the court issues a decision that suggests that you can bring a claim under I that should have been brought under C, that really undoes that. So maybe the situation is that bad facts make bad law from your standpoint. That is true, Your Honor, but I guess I don't know. Of course, if there was to be a settlement, you wouldn't have to worry about that, would you? Your Honor, that is correct. And I just throw that out. I mean, the government has a legitimate concern here, and you've got American signature, which if it was precedential would be problematic for you, right? Your Honor, I think, and then we would still say that the issue is that. No, no, but right now you're in a better shape than you would be if American signature was precedential, right? To some extent, Your Honor. Yeah, you can argue around it. But if we have to come down with a precedentialist opinion that goes the wrong way for you, you've raised a number of concerns here. Your Honor, we have at least discussed the possibility of a settlement. It seems like from the government's standpoint, what you're saying, it's a case that cries out for it, where you have a situation where somebody, where someone, there was an error made. It's good faith error. These things happen. It's not a perfect world. And on the other hand, there's some important legal issues. So I don't know. It's up to you. It's up to the parties here, but I just offer that observation. Yes, Your Honor, thank you. We request that the decision of the trial court be affirmed. Thank you, Your Honor. Thank you, Mr. Deaver. Mr. Wendt, you have some time in rebuttal. Mr. Wendt, just one thing. On the merits, is there any question here as to what dollar amount flowed from this, albeit completely innocent error? There is a question. Obviously, we have the amounts of what was paid. And then there's a question of what rate should have applied instead. And there's several options. The individual rate kept changing, didn't it? At one point, it was 12%, and then it was 8% or 9%. And I take it there may be problems about whether this particular rate begins on the 3rd of June or the 16th of August. But that's, again, a clerical calculation, where there may be some dispute, I suppose, about when it starts. Right. If I remember correctly, I think it started at 10, and then it went to 12 in one of the amended decisions. And then in the final decision, it went to 6. Are the facts in dispute, or is this a matter of doing a careful recalculation? Or are there issues as to what happened on which day and when? Well, I think an issue has arisen because a party with a similar history, Maria Yee, which is detailed in our brief, also posted cash deposit rates at the 198% rate. And they requested a review, but that review was ultimately rescinded under an agreement with Commerce. Are they one of the, I don't see them as one of the plaintiffs. Right, because they ended up getting a refund of 6%, or down to 6%. So they still made a settlement? Yes, during with Commerce at the administrative review phase, subsequent to the rescission of our review. And so that's why we think there's still some question of whether it's 10%, 12%, or 6%. So in other words, Mr. Durburg's caution about saying the dollars are not in dispute is well taken. And there is some question about the dollar amount. Well, what I'm trying to understand is, is this a question for the court in which there are witnesses and so on? Or is this a matter of putting the dates of importation, the amount of deposit, and the assessment on some kind of chart and doing the arithmetic? I think it's not a question for witnesses. It's a question for charts, and also a question of whether Fairmont Design should be treated equally with Maria, receive equal treatment with Maria Yee. Have they received? And to our understanding, they posted cash deposits rates at $198,000, did not participate in an administrative review, and at liquidation, paid only 6%, receiving refunds of the difference. Well, I take it at this point, as of this very moment, we may not be able to determine now exactly how much you would be entitled to if you ultimately prevail on the merits. Right now? Yeah. Or whether we could? Well, how much? That is, there may be a dispute over whether for a particular period of time the rate is 10% or 12% or 8%. And that's something that somebody is going to have to decide. We don't know whether it'll be the court or the parties perhaps can work something out. Although I wouldn't put it past us. I don't think there should be much of a dispute once we dig into the numbers. But is it correct there is no dispute that 198% is incorrect? That's correct. There's no dispute that thermo designs are correct. If you were overcharged under any theory, there may be a dispute over how much you were overcharged. Let me add, Mr. Dearburg said that this case is not necessarily, and you can correct me if I'm wrong, I think he said this case is not necessarily controlled by American Signature with respect to the jurisdictional issue. You heard what he was saying, the discussion we were having. What is your view on that? We think the only difference was that Fairmont Designs itself brought this issue on cash deposit rates to the forefront at the investigation level. And we don't think that's a material difference. You're just saying the only factual difference. The factual difference is that Fairmont Designs raised the issue in their case brief, whereas American Signature did not participate. And we don't think that's legally significant. So you're saying what we said, albeit non-precedentially, on November 30th of 07, controls this case. Yes, that's our position. And the Court of International Trade believes that it controls this case. Right. At least its decision, that court's decision. Yeah, both by the language of the decision and the fact that the decisions were rolled out together and the procedures of the cases. Any more questions for Mr. White? Any more questions? Thank you, Your Honor. Thank you, Mr. White. And thank you, Mr. Deardorff. The case is taken under submission.